Argument not to exceed 15 minutes per side. Mr. Shannon, you may proceed with the appellant. Good morning. Good morning, Your Honor. Joseph Shannon, appearing on behalf of Comerica Bank. May it please the Court. Today we ask that this Court reverse the District Court's grant of summary judgment in favor of Larry Pratt and grant summary judgment in favor of Comerica Bank. If I could, Your Honor, I would focus the Court, in the little time I had, on page 18 of the judge's opinion. Page 18 of the judge's opinion is the key to her opinion, and on that page she makes two statements. Two essential mistakes. One, she begs the question as to what it means, what the judgment in Montana means. Seizure damages, return the collateral, return being the word the Montana Supreme Court used. And two, without support from the record or even with reference to the language of the contract, she supposes the party's intent with respect to a provision in the contract, which she had already determined was ambiguous. Unambiguous, I'm sorry, Your Honor. The opposition in this case repeatedly accuses Comerica of attempting to re-litigate the Montana litigation. And in fact, it is just the opposite that is going on here. Both the trial court and the Supreme Court of Montana found that Comerica had to return the collateral that it determined was ambiguous. And it had wrongfully been seized. And when I say it had to return the collateral, both the trial court and the Supreme Court counted up the collateral that had been returned and ordered it returned down to the 16 cents that had been returned. The trial court referred to this as seizure damages. The Supreme Court used the words so-called seizure damages and said, regardless of the nomenclature, they were used. But what Judge Beckering did wrong was she assumed away the problem by merely saying, and perhaps the most important sentence in her opinion, is on page 18, and it says, the damages that Comerica paid were simply that, colon. It is completely unclear what that may appear to, but the colon says damages for Comerica's misconduct. The only case, the only cause of action. Tell me what I'm missing when I think of it this way. Guarantees follow debts. And I construe the Montana Supreme Court decision as saying, yeah, this was a loan, and in the normal course, Comerica would be entitled to the $10 million back. But because of its breach of the forbearance agreement, no. So it blows up the debt, and if it blows up the debt, it blows up the guarantee. Why isn't that the right way to think about it? Well, Your Honor, the claim that was pending in the trial court was a breach of contract action. And the problem with a breach of contract action is the term is included in the definition. But a breach of contract action requires a breach of a contract and damages that flow from it. And we tried the case of whether or not damages flowed from that breach. And Masters was unable to demonstrate, in fact, that there was lost profits. That was their claim. So what the court did in one sentence without authority, and I'm not here to question it, but what the court did was to say, you have to return the collateral. But aren't you asking us to come to a result that would subvert what the court did? You're saying you're not questioning what the Montana court did, but if we were to rule in your favor, wouldn't we be kind of subverting their ruling? Absolutely not, Your Honor. I pointed to repeated cases in which courts have enforced reinstatement clauses. So there are many circumstances, admittedly most of them in the bankruptcy context, in which a secured creditor has to return assets and a preference action. And when that happens, there is a separate contract. And the reason that you're not subverting the Montana court is this case is brought on Mr. Pratt's guarantee. Mr. Pratt's guarantee was never before the Montana Supreme Court. And Mr. Pratt signed a guarantee that said, notwithstanding anything else, if Comerica gets its collateral and then that collateral has to be returned, he stands behind his guarantee. I was just going to ask about the verbs here, return and rescind and disgorge. And you keep saying return. I don't know whether that's the best argument out of those three for your side. I guess explain to me how it's a return. Well, the reason that I use the word return is not because I necessarily think it's the best word, but because it's the word that the Montana Supreme Court used at page 31 of its opinion. Yeah, but I guess it's not, I mean, was it a sum that was given back or was it instead damages for a breach? Well, all I can tell you is that the trial court says it's, quote, seizure damages and then they counted up, not the loss that was incurred as a result of it, but the actual amount that was seized. And notably there was $168,000, I think, paid to satisfy the remainder of the debt. And neither the trial court in Montana or the Supreme Court included that in damages. They included only the amount seized. And to go back to what I think is your central concern, which is are we subverting the Montana court? No, this is what the Montana court did. But why doesn't that make sense? If the amount seized is returned, it shows that there was the premature demand made by Comerica and that the amount seized is the amount that Comerica actually seized. So that should be returned because of the violation of the, I don't understand the logic of your point. It was returned and as a result of it being returned, there is a separate contract, a guarantee, which is implicated. So it's not that, I accept the fact that what the court... The guarantee should apply even when it was Comerica that was the bad actor according to the Montana courts? That's correct, Your Honor. I say bad actor. This is a breach of contract action. There were no punitive damages at all. Another way of getting at this, let's just say Masters is a real entity, still has funds. Is it your view that after the Montana decisions, Comerica could sue Masters for repayment of the underlying loan? I do not believe so, Your Honor, because Masters was in the Montana litigation. But what's bizarre to me is that's the direct original contract. That's where the loan and debt is. Isn't the guarantee always derivative of the debt? So, Your Honor, we cited to a number of cases in our brief in which the return of the collateral revives the debt. And that's what happened. It's really easy to understand why those are quite different. Preferences happen in every bankruptcy. Essentially, you're constantly getting stuff back before you liquidate or whatever you do. That's not this situation. This situation, as I see it, they said Montana saying the underlying obligation of Masters to pay the loan is no longer there. And in fact, you have to return the amount. And that's why it seems so odd to enforce the guarantee. It is an unusual circumstance, Your Honor. And Pratt did argue in the lower court that the indebtedness was gone. But the court's opinion does not stand on that ruling. The court's opinion stands on really two things. Which is, one, this is compensatory damages. But she never puts a code on that. And there's no code that you can put on it that fits. This is the return of the collateral. Absolutely. And if you try to describe something else, and to your point, Judge Moore, you could have a circumstance in which you were entitled to seize the collateral on the last day of the month, but you seized it on the first day of the month. And on the 15th day of the month, the debtor had the opportunity to execute on a contract that would have made him $100,000. And so there you would have a breach, early seizure, if you will. And you would have damages that flow from that seizure, which would be the $100,000. And in a different model, lost profits and lost value of the business, Masters tried to prove that point and couldn't prove it. And in fact, the court determined that there was no value. So instead it just gave the collateral back. Judge Sutton, an unusual circumstance, for sure. But what's before us is a contract provision. Isn't the premise of giving the collateral back that there's no duty to pay the underlying debt? As to Masters, the case is resolved. No question about that. But the question of the underlying debt was not before the court. Give me a case where a guarantee was enforced after the underlying debt was eliminated. So they're all the preference actions that we cited. Apart from preference actions, you don't have a case. I don't have a unique case like that. And I admit that these are unique facts. There's no question about that. But Pratt could have been a litigant in Montana. He chose for strategic reasons not to be so. He got the money back. Actually, we attempted to serve him on a trial subpoena through counsel in the courtroom. And they objected and admitted that he was not subject to jurisdiction and took a position. They were not subject to jurisdiction and the court upheld that position. He assigned his rights but not his obligations. There's no question about that. I guess what I'm pausing over is why you couldn't have filed a lawsuit against Masters and Pratt. We didn't owe any. We weren't owed any money. And this goes back to the set-off question as to what was before the court. A deck judgment. This would be a classic setting of a deck judgment. What would be the deck judgment? Because our defense was we had not breached the forbearance agreement. The deck action would not be, he doesn't owe us any money or we don't owe him any money. Because the balance of the debt was zero at that point. And that leads back to the question of the fact that we didn't assert the right to offset in the trial in Montana. We weren't owed any money. At no time were we owed any money. I'm sorry, I'm way past my time. Good morning. Good morning, your honors. May it please the court. We're asking the court to affirm the ruling of the district court below because she correctly found that the wrongful conduct of Comerica could not be used to reinstate the guarantee obligation of Mr. Pratt. I agree that this case is unique, but one of the unique things about the case is that at the time of the forbearance agreement, at the time that Comerica swept the funds, it was the lender that was in breach of the operative document between the lender and the borrower. In all of the cases that Comerica tries to rely on, that threshold premise is the opposite. The borrower is the one that has failed to make a payment when due. That's not the case here. And so that's a fundamental and threshold problem, and I'll get into that. The other threshold problem that they have is that there is no indebtedness. They have admitted that the underlying indebtedness was wiped out, and they admitted in the Montana court, and it was adjudicated there, that the indebtedness did not spring back into life, did not get reinstated upon the entry of a judgment against Comerica. And so as the court noted earlier, the guarantee follows the indebtedness. Without an indebtedness, there can be no liability on the guarantee. Why isn't one response to that that you can contract for anything? I mean, theoretically, if everything here was said, we are only just quoting the language of the reinstatement. Let's just hypothesize that the Montana Supreme Court just uses this language for whatever reason. Wouldn't we then have to honor the reinstatement clause? I mean, it's true, guarantees are derivative of debt, but you can contract for anything, even stupidly. But, Your Honor, here the difference is that reinstating it doesn't solve the problem. Because even if you were to say that the guarantee is reinstated, you still have to look at what was the status of the underlying indebtedness, and is there an obligation that's triggered by the guarantor. So let's go back to the nature of a guarantee. It's a secondary obligation. First, there has to be a failure to pay by the borrower a payment when due. And that's the first sentence of the guarantee. That's the contract between the parties. And so the guarantor has no obligation to pay because his obligation is secondary unless and until the borrower fails to pay. The borrower did not fail to pay here because under the forbearance agreement, the borrower had until February 16th, and Comerica did not give the borrower that opportunity. Comerica jumped the gun, they swept the accounts, and they didn't just take the money from the guarantor and the borrower. They rendered performance thereafter impossible. And so what they did was very different than the preference cases or other cases that they're trying to rely on. They did not exercise their rights. They violated the rights that were bargained for under the forbearance agreement. But if the amounts are the same, and obviously to me in a lot of ways this case seems to come down to framing, and they're lining up these two amounts, that's a pretty compelling point that they're exactly the same. And so I guess my question is why wasn't that judgment amount, you know, the loan that was disgorged in the Montana litigation? Well, the measure of damages, I don't question it, the measure of damages in Montana equaled the amount of money that they swept out of the accounts. And so ordinarily you would think of that as sort of a restitutionary kind of remedy, where the money that was taken in breach of the contract was restored. But what was not restored here was the full bargain under the forbearance agreement. The full bargain under the forbearance agreement was also an opportunity for the borrower to secure refinancing and make a payment by February 16th. And that's what you cannot undo, and that was what was not returned here. So the idea that somehow we're going to go back to the moment as if the payment wasn't made, that's what they want to say. If we go back to the moment as if the payment wasn't made, we're in a moment where there's no unpaid indebtedness that is then due by the borrower. There is no right for Comerica to exercise any enforcement against the guarantor at that moment. And so even... Does that mean Comerica has to go against the debtor as opposed to the guarantor? No, they don't have to go against the debtor first, but the debtor has to fail to pay first. That's the point, is that if the debtor doesn't fail to pay, then the secondary obligation of the guarantor doesn't kick in. Imagine this, if Comerica took the money on December 31st, and then on January 1st they realized, we shouldn't have done that, that was a blunder, and so they give it back. Could they then go on January 2nd to Mr. Pratt and say, your guarantee has been triggered because we had to reinstate and restore the money that we took? No, the trigger would be a failure by the borrower to pay when due. The borrower would still have the full period under the forbearance agreement to perform. And that's what was taken away, and by Comerica doing that, they rendered performance by the borrower impossible. And so what does that mean? It means there was never a moment in time when the borrower failed to make a payment when due under the forbearance agreement, and that's the trigger. It never happened. This might be an equities point, I'm not really pushing claim preclusion, but it's so striking to me that Mr. Pratt was not involved and that this argument was not raised in the Montana courts. I mean, I think if this argument had been raised in the Montana courts, the first judgment might have stood. I think the Montana courts would be quite surprised. But why wasn't he brought in? It sounds like he didn't want to be brought in. Maybe that was a risk he undertook, and here we are. It seems very strange to me he wasn't there. Comerica elected not to bring any claim against Masters or any of the guarantors. But he made the good point, why would he? They were happy with the status quo. For the very reason that the Montana Supreme Court ruled, was that they had failed to raise setoff in a timely way, and so they waived that opportunity to get a setoff. And so Comerica made the strategic choice not to do that. Comerica never wanted to concede that the forbearance agreement had any validity. That was their choice. That's why they didn't want to bring a deck action. That's why they didn't want to sue on that. Because they wanted to maintain the position that the forbearance agreement was a fiction. And so... That's why there were no affirmative claims or involvement by Masters or Pratt. Pratt assigned his claims to Masters, so in that capacity, Masters was functioning as his assignee for his rights under the forbearance agreement. Because they were all parties to the forbearance agreement, the guarantors and the borrower and Comerica. So I want to talk for a moment about... Let me just address briefly the bankruptcy point. I think the court understands that, but the idea that a debt is reinstated by operation of the avoidance power in the bankruptcy code has nothing to do with this case. That's a public policy determination in the bankruptcy code to put creditors on an equal footing once someone avails themselves of a bankruptcy. In those cases, and in all the cases Comerica relies on, there is an underlying default by the borrower. And so all we're talking about is how do we net things out in a post-default world when there's a bankruptcy. That's not the case here. There's not an underlying default, and we're not using the public policy considerations of the bankruptcy code. I think it's also important to just focus a little bit on the status of the indebtedness. Because the indebtedness was an issue that was discussed below in this court and in the district court, and it was also discussed and adjudicated at the Supreme Court level in Montana. So in the district court here, there was an effort to obtain discovery about the status of the indebtedness. And Comerica steadfastly took the position that there is no indebtedness. It went to zero. We had a 30B6 deposition, and they've tried to recharacterize her as a tax witness, but her role was actually to describe a summary of records that was produced by Comerica that showed a zero indebtedness through the end of 2021. Those were their records, their discovery, and that's what they produced. And we asked that witness, who was designated by Comerica, about that summary. And she said, it shows that the indebtedness was zero through 2021, and then said, and it remains that way to this day. This was their designated witness on this topic. So on that basis alone, they cannot argue somehow that there now is an indebtedness. Their other 30B6 witness said, well, we don't have an indebtedness on our books because we have a system limitation. When we asked what the system limitation was, he said, well, we don't have a signature from the borrower evidencing any current debt. That's what the system limitation was. So not only did they not show anything in their records, they have no basis to show anything in their records. And then their counsel explained, what really is going on here is we all know the debt is zero, we're just disagreeing about what the legal effect of the judgment is. That's it. It was a legal argument, not a factual one, but there is no underlying indebtedness. It's been admitted. And even in the Montana Supreme Court, I understand, they say, well, we didn't adjudicate that in the district court, but they raised it on appeal. They raised the issue of a set-off, and they actually specifically raised the issue of, if we pay this judgment, it will reinstate the debt, and we're entitled to a set-off. And the Montana Supreme Court considered that argument and rejected it. And they looked at the pleadings from below, they looked at what had happened in the trial court, and they said, the set-off argument must have been waived under Montana rules. It was raised, it was not raised, and therefore it was lost. And that is why we talk about Comerica being collaterally stopped. That's a procedural ruling, and that's not really what we're asked to decide here, is that correct? I mean, the posture here is different. It strikes me. Well, the ruling was not simply procedural, it had a substantive effect, because it says, you, Comerica, had an opportunity, and actually had a duty, if you wanted to pursue this notion, that the debt would be reinstated upon payment of a judgment, you had to raise it. Now you raised it here, and we reject that, and we say you cannot do that. So I understand that it was based on Montana procedure, but it did have a substantive effect in terms of what it means for that particular issue. And so that is the issue, was... Are you saying there's issue preclusion here, then? As to the question whether the indebtedness is reinstated by payment of the judgment. That's the issue that Comerica put to the Montana Supreme Court. And was decided by the Montana Supreme Court. And so what we're saying is that it cannot now here say, well, we want to reopen that issue and say, in fact, the indebtedness did get reinstated when we paid the judgment. And on the other side, already conceded that the debt was wiped out. I could be wrong, but I thought that's what he said. I understood his position to be that they were not a stop from raising that again today. And so that's why I just wanted to make the point that it was an issue that actually made it to the Montana Supreme Court. It was raised in that case, and it was adjudicated, and there was a decision made. So just to go back, really, I think, unless the Court has further questions, I think the key point for me is that this is a secondary obligation. It is triggered by a failure to pay a debt when due. The forbearance agreement set the terms of when the debt was due. The borrower never failed to make the payment under the forbearance agreement. Comerica precluded that opportunity when they swept the account and they rendered further performance impossible. And that's why Comerica's wrongful conduct cannot be the trigger here. It cannot be used to reinstate the guarantee. It would turn the whole idea of a guarantee on its head by saying there's guarantor liability even without a failure by the underlying borrower to make a payment when due. Thank you. Thank you. In my short time, I want to make just a couple of points. Judge, you're absolutely correct. The ruling in the Montana Supreme Court on this subject was whether or not set off was asserted. And it relates to the question you asked, Judge Moore, which is could we have pled in the alternative? We defended in the alternative. We defended that there was no breach of the forbearance agreement. And although I lost on that position, it's absolutely the case and I still stand by it. But we also defended on the fact that there were no damages. We couldn't possibly have anticipated after this matter went to the Montana Supreme Court once because Montana refused to apply Michigan law. It had to come back down that the district court in Montana would issue something called seizure damages under Michigan law. Part of the problem is, and this is what I think this Court's had to struggle with and what Judge Becker refused to struggle with is, what is it? Because if it's seizure damages, then we all have to live with it, right? But that means return of the collateral. And there's no other thing that it can be. The Court did not rule that the wrongful conduct prohibits the use of the reinstatement language. First of all, the wrongful conduct is alleged to have occurred with respect to Masters and with respect to Mr. Pratt's rights. Importantly, Mr. Pratt did not put his obligations before the Montana court. He could have. And it rests with Mr. Pratt that in his entirety, he was not before the court. And that was a strategic decision. Importantly, what my brother counsel said is just wrong. This was a payment guarantee. And in that guarantee, there is a broad waiver of defenses. And this Court has consistently upheld waivers of defenses even, and this is the Wingate case, I believe, even for res judicata. And we were not obligated to go after Masters first at all under this guarantee. I concede it is unique. And I'd like to close just because I think the Court is troubled. Did he waive the defense that if there's no debt, no guarantee? There is a debt, Your Honor. Did he waive the defense, hypothetically, there's no debt, there's no guarantee? If Comerica was not required to return the collateral, there would be nothing to enforce under the guarantee. So I don't know how to answer that question. Comerica was required to return the money. And therefore, that independent obligation, that guarantee comes back into existence. And I don't think there's anything novel about that in the cases that we have cited. Where the primary obligor is obligated to return the money, the debt is revived. There's a bit of a word game going on, which is, is or was. It is absolutely the case that we agreed that until we repaid the judgment, the debt had been paid in full. And there is a document problem, but that's a question of fact. Which is, as of the time that the money was returned some 18 years later, I've lost track, the system that Comerica used was different. But the fact that there's not a ledger of some accountant from, you know, handwriting notes, doesn't mean that there's not a debt. It may be a question of fact that we have to follow. And this is a contract action. And the equities are important, at least to the extent they bother this court. Mr. Pratt guaranteed an investment because he thought he was going to make money on it. And the investment was worth nothing. So says the Montana court. Comerica loaned the money on that guarantee. Pratt has the money that he invested in a failed operation. But one of the more troubling things about Judge Beckering's opinion is her upside down understanding of the equities. Mr. Pratt walked away with the money after he gambled money on an investment. Entitled to do so. And somehow he walked away with the money. Thank you for your time. I know I'm over time and I appreciate it. Thanks to both of you for your very helpful briefs and arguments. We really appreciate it.